CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 2 5 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |
|---|---|
| DAVID PAUL OQUINN, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:08CV00426 |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| RON ADKINS, | ) |
| | ) By: **Glen E. Conrad** |
| Defendant(s). | ) **United States District Judge** |
| | ) |

Plaintiff David Paul Oquinn, a Virginia inmate proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendant jail official acted with deliberate indifference to his serious medical need for dental attention. Defendant filed a motion to dismiss supported by affidavits, and Oquinn responded, making the matter ripe for disposition. Upon review of the record, the court concludes that the motion to dismiss must be denied.

## Background

Oquinn brought this complaint in July 2008, alleging that officials at the Southwest Virginia Regional Jail Authority Haysi facility were violating his rights by refusing to provide him access to a law library. The court filed the complaint conditionally and advised Oquinn that he should particularize his allegations so as to demonstrate how the defendants' actions had caused injury to his litigation efforts. Oquinn filed an amendment, but still did not demonstrate how the alleged lack of access to a law library had caused specific injury to his litigation efforts. Accordingly, the access

to courts claim was dismissed.[1] Oquinn's amendment also raised a second ground for relief, alleging that the jail's medical charge nurse, Ron Adkins, had delayed getting Oquinn to an oral surgeon for treatment of an abscessed tooth. The court allowed this amendment and served the case on the new defendant.

In the amendment, Oquinn alleges the following sequence of events on which he bases his claim against Adkins. In late April 2008, a tooth on Oquinn's upper jaw started falling apart, and he developed an abscess around the tooth that caused headaches and fever. The jail's dentist x-rayed Oquinn's jaw and discovered a complication that prevented him from being able to extract the tooth at the jail's facility. He placed Oquinn on antibiotics and notified jail officials that the inmate would need a furlough as soon as possible so that he could obtain the necessary oral surgery at an appropriate facility. Jail officials informed the judge that jail personnel would transport Oquinn to see the oral surgeon, and the judge agreed with this procedure. On May 12, 2008, Oquinn wrote a request for information about his furlough and was told that medical would get him an appointment with an oral surgeon and would provide additional antibiotics if warranted by his symptoms. Oquinn continued to write requests for information about the appointment, but was not told when the appointment would be. In late June, 2008, he wrote requests asking again about the oral surgery appointment, stating that his tooth was falling apart more, causing pain, headaches, and nausea, and that a nerve was exposed. He saw the jail dentist in early July. The dentist took additional x-rays and recommended treatment as soon as possible. Oquinn's parents made an appointment for him

---

[1] By separate opinion and order entered September 17, 2009, the court dismissed the access to courts claim, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. It is also clear from his exhibits to Dkt. No. 4 that Oquinn did not complete his administrative remedies as to his legal materials claim until after filing this lawsuit. See 42 U.S.C. § 1997e(a) (requiring inmates to exhaust available administrative remedies before filing federal lawsuit concerning prison conditions).

- 2 -

to see the oral surgeon on July 30, 2008, but the jail dentist said he should see the surgeon earlier and put him on antibiotics again. His face swelled up, and he had no appetite, suffered "bad headaches," and begged for help during every sick call. Although he was charged for these sick call visits and for medications, he did not receive any pain medication.

Defendant Adkins submits his affidavit in support of his motion to dismiss, presenting the following version of events. Oquinn refused the first appointment jail staff had made for his oral surgery. Oquinn then attempted to arrange through his attorney and his family to get a furlough so that his family could take him for oral surgery. As soon as Adkins discovered that the furlough had been cancelled, he scheduled another appointment for Oquinn to receive oral surgery. The surgeon's office later informed Adkins that because of equipment failure, Oquinn's surgery would need to be rescheduled to the next available date, October 22, 2008. Oquinn was taken for that appointment and the oral surgeon completed the procedure.

Adkins also provides evidence about the grievance procedure available to Oquinn at the jail. The jail's Standard Operating Procedure ("SOP") has five steps. First, the inmate files a grievance. Second, staff members investigate the grievance and respond in writing within nine days. The inmate is not given the results of the investigation; rather, the written response will inform the inmate that the investigation was completed and include a reason for the decision reached. Third, the written grievance response is returned to the inmate, at which time, he may proceed to the fourth step, an appeal to the Chief of Security. The Chief will either process the appeal himself or, if warranted, convene an impartial grievance review board to review both the grievance and the response, and question those involved if necessary. The board then writes recommendations to the Chief of Security, who makes the final decision to uphold or deny the appeal.

- 3 -

Adkins and his staff have reviewed the inmate requests that Oquinn filed during the period when he was complaining about the delay in scheduling his oral surgery. The majority of his submissions were inmate requests for information, which are not part of the formal grievance procedure. It is undisputed that Oquinn filed a grievance on July 30, 2008, about his need for dental surgery. It stated:

> (TAKE THIS VERY SERIOUSLY WHEN ANSWERING BACK). This facility stopped my furlough, telling the judge that the jail would take me to my dentist appointment. The judge agreed. Weeks later and after my 30th July appointment, I still was not taken to the dentist. I went back to court. The judge said he would call to see what the hold up was. My mom called the dentist, Mr. Hollyfield, in Abingdon. He told my family that he has heard nothing from this jail at all. Plus a couple family members that work here told my dad that this jail never did truly intend to take me to my appointment, that they were going to ship me instead and they will witness in court I'm being made to suffer for no reasons at all. I want to go have this oral surgery done. I'm tired of the pain and suffering that you all are putting me through and all the lies. Or ship me so I can get this fixed. What's the real problem here?

(Dkt. No. 4, unnumbered exhibit). A response dated August 1, 2008, from Lt. Gilda Rose states, "Mr. Oquinn, I have talked with medical. You have an appt. We will be the one to take you." Oquinn's jail file did not include any evidence that Oquinn appealed Lt. Rose's response to the Chief of Security as was his option under the SOP.

On the copy of the July 30, 2008 grievance that Oquinn attaches as an exhibit to his amendment, the appeal section at the bottom of the form has been completed. Oquinn indicates that he is not satisfied because "[I] need tooth operation ASAP. I'm in pain know [sic]. I need help now!!!" Under the "Appeal Review" section on the form is written "Addressed." The purported signature of "R.Adkins" appears on the form, dated August 6, 2008. Adkins states that this portion of the form is falsified. He states that he would not have responded to an appeal, since he is not

- 4 -

Chief of Security, and asserts that he did not sign the form; he says the signature is similar to his, but is not his. He also points out that this portion of the form was never stamped "received" by the appropriate officer authorized to respond to Oquinn's appeal, Captain Douglas Baker. Baker's affidavit states that he never received a grievance from Oquinn, dated August 1, 2008, regarding his oral surgery appointment.[2] Based on this discrepancy, Adkins asserts that Oquinn never completed the appeal on the August 1, 2008 grievance and argues for dismissal of the action for failure to exhaust administrative remedies.

In response to the motion to dismiss, Oquinn asserts that Captain Baker's affidavit is false. Oquinn asserts that he "exhausted the grievance procedure more than once" and denies that he falsified any documents. He states that he filed many papers and grievances about his surgery appointment and about pain during his three years at the jail, but never saw those documents again. He submits a recent grievance response indicating that an officer's search of Oquinn's medical records did not reflect that Oquinn ever refused a scheduled oral surgery appointment, as Adkins asserts in his affidavit. On March 4, 2009, the court received notice that Oquinn had been transferred to a state correctional facility.[3]

---

[2] He also states that his review of Oquinn's file revealed no other grievances regarding the inmate's oral surgery appointment.

[3] Within a few weeks after the oral surgery was performed, Oquinn filed documents with the court, offering to dismiss this action if he could be moved to another jail. Now that he has been transferred, he may move for voluntary dismissal of the action if he so desires. However, the court will not construe his previous submissions as requesting such disposition, given that several weeks passed between those requests for transfer and the transfer itself.

## Discussion

Inasmuch as defendant has submitted evidence outside the record in support of the motion to dismiss, the court must treat the motion as a motion for summary judgment, applying the standard provided in Fed. R. Civ. P. 56 for summary judgment. See Fed. R. Civ. P. 12(b). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986).

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well established that the exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other

- 6 -

critical procedural rules." <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006). Failure to file on time, according to the agency's deadlines, is not "proper exhaustion." <u>Id.</u> An inmate's failure to exhaust is an affirmative defense and the burden is on the defendant to prove the failure to exhaust. <u>See Jones v. Bock</u>, 549 U.S. 199, 216 (2007).

The court concludes that material disputes remain as to whether or not Oquinn exhausted available administrative remedies as to his claims that Defendant Adkins was deliberately indifferent by delaying the inmate's oral surgery appointment and in failing to provide pain medication in the meantime. In contradiction of defendant's evidence that Oquinn's grievance file does not include any appeal of the August 1, 2008 grievance, Oquinn states that Captain Baker's affidavit about the contents of his grievance file is false, that he (Oquinn) never falsified any document, and that he exhausted the grievance procedure more than once. Defendant offers no authority on which the court could determine, on summary judgment, whose statements are more credible concerning Oquinn's exhaustion of administrative remedies. <u>See Gray v. Spillman</u>, 925 F.2d 90, 95 (4th Cir. 1991) (finding that where resolution of an issue of fact depends upon credibility determination, summary judgment is not appropriate). Accordingly, the court finds Oquinn's allegations to be sufficient to create a genuine issue of material fact as to whether his efforts to exhaust administrative remedies in a timely manner were frustrated by the actions of prison officials so as to satisfy § 1997e(a). <u>See,</u> e.g., <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001) (finding that "a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)" and inmate's allegations raised an inference that he exhausted "available" remedies). For this reason, the court

- 7 -

cannot grant defendant's motion to dismiss the case under § 1997e(a) for failure to exhaust administrative remedies.[4]

The court also finds that Oquinn's allegations state possible claims actionable under § 1983. Specifically, he alleges that Adkins purposely delayed for several months in scheduling Oquinn's oral surgery appointment in hopes that the inmate would be transferred to a VDOC prison so the jail would not have to pay medical and transportation costs and that Adkins failed to provide treatment for Oquinn's severe pain in the meantime. A reasonable jury could find that such actions or omissions violated Oquinn's constitutional rights. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Of course, Adkins may be able to present affidavits and medical records on which he could establish that he is entitled to summary judgment regarding Oquinn's medical claims. However, the court cannot make that determination based on the current record. Accordingly, the court must deny the motion to dismiss. An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This _25th_ day of March, 2009.

_____
United States District Judge

---

[4] If the case were to proceed to a jury trial, Adkins could choose to present evidence in support of the exhaustion defense.

- 8 -