CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

FEB 0 1 2010

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DAVID PAUL O'QUINN, )
)
        Plaintiff, )
)
v. ) Civil Action No. 7:08cv0426
)
RON ADKINS. )
)
) By:  Hon. Michael F. Urbanski
        Defendant. )      United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter is before the court on motion by defendant, Ron Adkins, for summary judgment. (Dkt. # 39.) Plaintiff, David Paul O'Quinn[1], is an inmate in state custody. He filed suit under 42 U.S.C.A. § 1983 claiming that Adkins was deliberately indifferent to his tooth pain and need for oral surgery while O'Quinn was incarcerated in a regional jail at Haysi. O'Quinn has responded (Dkt. # 44). Adkins filed a reply (Dkt. # 47), to which O'Quinn has filed an additional reply. (Dkt. # 49.) This matter is ripe for disposition.

O'Quinn alleges a constitutional violation because of a delay in scheduling his oral surgery. A dentist recommended oral surgery on January 26, 2008, which was performed on October 22, 2008. O'Quinn has no claim. O'Quinn lacks an injury of sufficient seriousness to establish deliberate indifference. Additionally, the lengthy delay in surgery was out of Adkins' control and largely the result of O'Quinn's desire to have his family take him for treatment. The undisputed facts show that Adkins attempted to resolve each delay of the surgery in a reasonable

---

[1] Plaintiff's name appears as both "Oquinn" and "O'Quinn" on the record and in his own filings. Because defendant refers to "O'Quinn" in the motion for summary judgment, that style is used herein.

fashion, and that pain relief and medical care were provided to O'Quinn during the delays. Thus, and as explained more specifically below, the undersigned recommends that Adkins' motion for summary judgment be **GRANTED** in part, **DENIED** as moot as to his qualified immunity claim, and that O'Quinn's claims be **DISMISSED**. Additionally, the undersigned recommends that O'Quinn's motion to dismiss the interrogatories propounded against him (Dkt. # 54, 55) be **DENIED AS MOOT**.

## I.

### A. Parties and Policies

O'Quinn was incarcerated at the Southwest Virginia Regional Jail in Haysi, Virginia during the time period at issue.[2] Defendant Ron Adkins was and is an administrative nurse at the jail. Exhibit 3 to Dkt. # 43, at ¶¶ 2, 6. As an administrative nurse, Adkins oversees the medical department, which includes four nurses and a medical records clerk. Id. at ¶ 3. Dr. Leonard Tatro provided dental services every third Saturday at the jail during the time at issue. Exhibit 4 to Dkt. # 43, at ¶ 1. He has been licensed to practice dentistry for twenty-nine years, and has worked for the Virginia jails for nine years. Id. at ¶ 2. Dr. Tatro visited the jail thirteen times between O'Quinn's diagnosis and surgery. Id. at ¶ 10. Of these available visits, O'Quinn only requested four dental examinations. Id. Every time O'Quinn requested a facility dentist, physician or nurse, he was given access to care. Id.; Exhibit 3 to Dkt. # 43, at ¶ 17.

---

[2]Documents at docket number 43 are under seal. Those documents are referenced herein, though the personal information that necessitated the seal is not referenced herein.
The exhibit numbers printed on defendant's documents are inconsistent with the numbers presented as hyperlinks at Dkt. ## 39 and 43. For ease of reference, the exhibit and attachment numbers printed by defendant on the documents are referenced herein. Additionally, Exhibits 3 and 4 at Dkt. # 43 did not replace the Exhibits at Dkt. # 39, but rather supplemented them such that there are four defense exhibits in total.

Inmates requiring outside oral surgery may receive care from an oral surgeon outside of the jail by arranging a furlough, requiring a court order, or by scheduled medical transport by jail personnel. Exhibit 3 to Dkt. # 43, at ¶ 9. If an inmate requests a furlough, the staff of the regional jail does not make arrangements for the surgery. Id. at ¶ 10. If the inmate remains in custody and uses scheduled medical transport, jail staff make the appointment for the oral surgery. Id. at ¶ 13. To ensure security, the Jail Authority Standard Operating Procedures require that inmates not be told when they will receive medical transport. Id. at ¶ 14; Attachment 1 to Exhibit 1, Dkt. # 39, at 1-2. Additionally, prisoners are not permitted to contact family or friends during the transport. Exhibit 3 to Dkt. # 43, at ¶ 14; Exhibit Attachment 1 to Exhibit 1, Dkt. # 39, at 1-2.

In the experience of Dr. Tatro, it is not unusual to wait several months for oral surgery in southwest Virginia. Exhibit 4, to Dkt. # 43, at ¶ 14. Dr. Tatro notes that few oral surgeons in southwest Virginia will accept inmates for treatment. Id. at ¶ 14. Indeed, only two oral surgeons who would both see inmates and are capable of performing the type of procedure that O'Quinn required. Exhibit 3 to Dkt. # 43, at ¶ 19. Moreover, it is not unusual to wait two to three months for the first available oral surgery appointment. Id.

### B. Chronology of Events

On January 26, 2008, O'Quinn first saw Dr. Tatro, and complained of tooth pain. Exhibit 4 to Dkt. # 43, at ¶ 4. Dr. Tatro noted that O'Quinn's upper left molar, numbered fourteen, was decayed. Id.; Attachment A to Exhibit 3 at Dkt. # 43, at 1. Because the roots of the tooth were near O'Quinn's sinus, Dr. Tatro recommended an off-site extraction by an oral surgeon. Exhibit 4 to Dkt. # 43, at ¶ 4. O'Quinn requested Tylenol, and Dr. Tatro prescribed Tylenol Extra

Strength, 500 mg, to be taken by mouth twice daily for fourteen days. Id.; Attachment A to Exhibit 3 at Dkt. # 43, at 1.

An oral surgeon was available to see O'Quinn on February 8, 2008, through scheduled medical transport by jail authorities. Exhibit 3 to Dkt. # 43, at ¶ 9. This appointment was available because of a prior cancellation. Id. at ¶ 8. O'Quinn refused the February 8th appointment, informing nurse Adkins that he wanted to arrange a furlough, and that his family would make him an appointment for surgery. Id. at ¶ 11. Indeed, O'Quinn led Adkins to believe that a furlough had been granted. Id.

On May 2, 2008, O'Quinn asked to see a dentist for the second time. Exhibit 4 to Dkt. # 43, at ¶ 6. O'Quinn requested the appointment because of tooth pain, though the pain was not caused by the tooth requiring extraction. Id. In passing, Dr. Tatro asked O'Quinn about the tooth requiring oral surgery. Id. O'Quinn indicated that it hurt, but that it was not severe or his primary concern. Id. Dr. Tatro observed no redness nor any swelling around the tooth requiring oral surgery. Id. O'Quinn requested Tylenol Extra Strength and Amoxicillin, which Dr. Tatro prescribed. Id.; Attachment A to Exhibit 3 at Dkt. # 43, at 1. However, the Amoxicillin was to treat gingivitis; the tooth requiring oral surgery did not need antibiotic treatment. Exhibit 4 to Dkt. # 43, at ¶ 6.

By Order dated July 1, 2008, Judge Henry A. Vanover of the Circuit Court for Dickinson County revoked O'Quinn's furlough. Exhibit 2 to Dkt. # 39; Exhibit 3 to Dkt. # 43 at ¶ 12. Because O'Quinn could not receive treatment through a furlough, he had to visit the oral surgeon through scheduled medical transport by jail authorities. As soon as nurse Adkins learned that O'Quinn's furlough had been revoked, he arranged an appointment for O'Quinn for August 27,

2008. Exhibit 3 to Dkt. # 43 at ¶ 13. This appointment was the earliest available; additionally Adkins requested notice if an earlier appointment became available. Id.

On July 5, 2008, O'Quinn requested the third dental appointment during the time period at issue. Exhibit 4 to Dkt. # 43, at ¶ 7. Dr. Tatro examined the tooth requiring surgery. He generally rates tooth swelling as either "slight", "moderate" or "severe." Id. Upon examination, he noted "slight" swelling for the tooth. Id.; Attachment A to Exhibit 3 at Dkt. # 43, at 2. O'Quinn indicated that the tooth was bothering him, but he did not indicate extreme pain. Exhibit 4 to Dkt. # 43, at ¶ 7. O'Quinn requested Tylenol, which Dr. Tatro prescribed. Id. The dentist also prescribed an antibiotic. Id. Dr. Tatro opined in his affidavit that it is not uncommon for tooth pain to "cycle," so that it hurts for a period and then subsides. Id. at ¶ 8. Dr. Tatro believed that the pain in the tooth requiring surgery had subsided, which was part of the reason O'Quinn refused an early appointment. Id.

Shortly before O'Quinn's scheduled surgery date, the surgeon's office informed Adkins that the office's equipment had failed. Exhibit 3 to Dkt. # 43, at ¶ 15. Adkins rescheduled O'Quinn's surgery for the next available date, October 22, 2008. Id. at ¶ 16. Adkins again requested that if another appointment became available, that O'Quinn receive it. Id.

As requested, Dr. Tatro saw O'Quinn a fourth time on October 18, 2008. Exhibit 4 to Dkt. # 43, at ¶ 11. O'Quinn indicated that he was waiting on surgery and was in pain. Id. Dr. Tatro investigated why O'Quinn didn't want Motrin, because in Dr. Tatro's experience Motrin is better at controlling pain that Tylenol. Id.; Attachment A to Exhibit 3 at Dkt. # 43, at 2. O'Quinn had not wanted to take Motrin because he believed it made his leg stiff. Dr. Tatro determined that O'Quinn was not allergic to Motrin, and prescribed it to control O'Quinn's pain.

Exhibit 4 to Dkt. # 43, at ¶ 11; Attachment A to Exhibit 3 at Dkt. # 43, at 2. O'Quinn said that he would take it. Exhibit 4 to Dkt. # 43, at ¶ 11; Attachment A to Exhibit 3 at Dkt. # 43, at 2. Though Dr. Tatro did not observe any swelling around the tooth, or any active infection, he prescribed antibiotics so that no infection would set in and further delay surgery. Exhibit 4 to Dkt. # 43, at ¶ 12. No earlier appointment became available, so O'Quinn's tooth was ultimately extracted on October 22, 2008. Exhibit 3 to Dkt. # 43, at 17.

Prior to his surgery, O'Quinn filed a number of inmate information requests, seeking information as to when his surgery would take place. Exhibit 3 to Dkt. # 43, at ¶ 20. However, because of prison policy prohibiting prisoners from knowing when they will leave jail, Adkins could not inform O'Quinn of the dates of his appointments. Id.

O'Quinn also requested visits with the dentist and medical personnel. Every time he requested a visit he was given one. He received pain relief, including a variety of medications, on request. At no time did Dr. Tatro observe any dental emergency. Exhibit 4 to Dkt. # 43, at ¶ 13. In his opinion, the surgery could be scheduled according to ordinary protocols, while O'Quinn's pain was addressed with medication. Id.

## II.

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986).

The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials not be deliberately indifferent to the "serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To demonstrate deliberate difference, a plaintiff must establish the existence of a serious medical problem. Such a need usually involves a condition that threatens loss of life, illnesses or permanent disability. Sosebee v. Murphy, 797 F.2d 179, 180-81 (4th Cir. 1986) (reversing summary judgment for defendants and remanding where guards knew of serious illness of plaintiff and exhibited deliberate indifference to request for medical treatment prior to inmate's death); see Estelle, 429 U.S. at 104-06. Conditions or delays that cause or perpetuate pain may also show serious medical need. Sosebee, 797 F.2d at 181-82; Loe v. Armistead, 582 F.2d 1291, 1295-96 (4th Cir.1978).

Second, O'Quinn must present facts showing "deliberate indifference," i.e., facts tending to demonstrate actual knowledge or awareness of the serious medical need on the part of the named defendant. Farmer v. Brennan, 511 U.S. 825, 835-38 (1994). Merely alleging malpractice on the part of medical personnel is insufficient to state a claim under the Eighth Amendment. Estelle, 429 U.S. at 106. Similarly, mere disagreements between an inmate and medical staff as to the proper course of treatment do not state a claim upon which relief can be granted; "[q]uestions of medical treatment are not subject to judicial review." Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Rather, the Supreme Court has made clear, deliberate indifference requires something greater than negligence. Estelle, 429 U.S. at 105. The "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-06. Moreover, "failure to respond to an inmate's known medical needs

7

raises an inference that there was deliberate indifference to those needs," whereas medical malpractice tort claims are not cognizable. Miltier v. Boem, 896 F.2d 848, 853 (4th Cir. 1990) (citing Sosebee, 797 F.2d at 182-83). Thus, to establish deliberate indifference, a plaintiff must show subjective awareness of the serious medical need on the part of the defendant. Farmer, 511 U.S. at 847.

O'Quinn's claims fail because he lacks a serious medical need within the meaning of the Eighth Amendment and because Adkins was not deliberately indifferent to O'Quinn's need for oral surgery.

### A. O'Quinn Lacks A Serious Medical Need

O'Quinn's need for surgery was not a serious medical need within the ambit of the Eighth Amendment. Though tooth problems can cause severe pain and thereby be a serious medical need, the objective evidence in this case indicates that O'Quinn did not experience severe pains and that his situation was not an emergency. O'Quinn could have requested thirteen dental visits with Dr. Tatro during the time period at issue. However, he only requested four, one of which was prompted by a different issue. Over the course of these dental visits, Dr. Tatro classified O'Quinn's need for surgery as non-emergency, opining that it could be treated under normal prison procedures. His evaluations, reproduced in an affidavit and in verified medical notes, support this conclusion as they do not evidence an emergency. Rather, Dr. Tatro once observed "slight" swelling at the tooth at issue. Prior to the surgery, he observed no active infection. Dr. Tatro was of the opinion that O'Quinn's tooth pain would cycle, thus hurting occasionally. Moreover, O'Quinn's actions do not indicate an emergency. He refused an early surgery appointment, seeking a medical furlough whereby his family could take him to get oral surgery.

8

When O'Quinn requested pain relievers from Dr. Tatro, he requested only Tylenol Extra Strength and had to be convinced to take a stronger medicine.

Thus, O'Quinn has not met the threshold of showing that he had a serious medical need within the meaning of the Eighth Amendment and the undersigned recommends that his complaint be dismissed, and that the defendant be granted summary judgment.

### B. Scope of Claims Properly Against Adkins

Additionally, the delay in O'Quinn's surgery does not demonstrate deliberate indifference. As an initial matter, two of O'Quinn's complaints regarding his treatment are not properly directed against Adkins. First, O'Quinn appears to argue that Adkins was deliberately indifferent to O'Quinn's need for emergency oral surgery. However, as noted above, Dr. Tatro never classified O'Quinn's need for oral surgery as an emergency. Rather, Dr. Tatro determined that O'Quinn's need for surgery could be treated under normal prison procedures. Indeed, Dr. Tatro's evaluation remained the same throughout the time between diagnosis and surgery, even as Dr. Tatro made repeated evaluations of O'Quinn.

O'Quinn contests Dr. Tatro's evaluation, claiming that his situation was, in fact, an emergency. In his unverified pleadings, O'Quinn repeatedly argues that he experienced various serious physical symptoms from his toothache, and accordingly, should have received faster treatment.[3] Such allegations do not rise to the level of deliberate indifference, but rather at most

---

[3] O'Quinn's allegations include physical maladies that are not documented elsewhere in the record, including that his tooth fell apart, that his jaw fell apart and that he experienced extreme pain. See, e.g., Dkt. # 4, at 1, Dkt. # 44, at 2. O'Quinn's various pleadings do not meet the substantiation requirements necessary to create a genuine issue of material fact at summary judgment. Federal Rule of Civil Procedure 56(e)(1) provides that:

[a] supporting or opposing affidavit must be made on personal knowledge, set out facts

demonstrate a disagreement with Dr. Tatro's treating decisions, which are not cognizable under § 1983. See Estelle, 429 U.S. at 106. Moreover, as explained in the prior section, Dr. Tatro's conclusion that there was no emergency situation was well founded by his observations of O'Quinn.

Thus, as to O'Quinn's assertions of emergency, Adkins was not deliberately indifferent as he was not on notice of any emergency. See Miltier, 896 F.2d at 853 (deliberate indifference is failure "to respond to an inmate's known medical needs"). Moreover, Adkins has not acted inappropriately, as O'Quinn was able to have his medical situation evaluated upon his request. In this respect, Adkins' actions are distinguishable from those of prison officials who acted with deliberate indifference by depriving an inmate of the opportunity to be diagnosed with an emergency medical condition. See Sosobee, 797 F.2d at 181 (deliberate indifference by guards who failed to request medical attention for inmate complaining of extreme symptoms).

Second, O'Quinn appears to claim that Adkins was deliberately indifferent to O'Quinn's pain and refused him pain treatment. O'Quinn's vague and conclusory statements regarding his pain cannot overcome the facts properly placed in the record, which reveal that every time O'Quinn requested medication, he received it. Indeed, the affidavit of Dr. Tatro reveals that O'Quinn requested Tylenol, and had to be convinced to take the stronger medication of Motrin.

---

>       that would be admissible in evidence, and show that the affiant is competent to testify on
>       the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or
>       certified copy must be attached to or served with the affidavit. . . .

Additionally, affidavits must be sworn or signed under penalty of perjury pursuant to 28 U.S.C. § 1746. 27A Fed.Proc. § 62:651. See e.g., Lumoa v. Potter, 351 F.Supp.2d 426, 431 (M.D. N.C. 2004).

In contrast, the affidavits submitted in support of defendant's motion carry "a certificate of acknowledgment executed in the manner provided by law by a notary public or other office authorized by law to take acknowledgments" and therefore are "considered self-authenticating." Lumoa, 351 F.Supp.2d at 431 (internal citations omitted) (citing Fed.R.Evid. 902(8)).

O'Quinn had consistent access to doctors or dentists, who treated his pain as requested. Accordingly the undersigned recommends that O'Quinn's claim of deliberate indifference as to the treatment of his pain be dismissed.

### C. Delay in Oral Surgery

The remaining inquiry against the sole named defendant, administrative nurse Adkins, must be whether Adkins delayed O'Quinn's non-emergency surgery in a way that was deliberately indifferent. Adkins was not deliberately indifferent. The four delays of surgery were caused by factors outside of Adkins' control, chiefly O'Quinn's refusal of an appointment and his desire to receive a medical furlough with his family. Adkins responded to each delay reasonably, scheduling the first available appointment for O'Quinn's surgery.

First, Adkins obtained an early appointment for O'Quinn, which O'Quinn refused. Dr. Tatro determined that O'Quinn needed a tooth removed by an oral surgeon on January 26, 2008.[4] Materials properly placed in the record demonstrate that Adkins quickly obtained an appointment for O'Quinn's oral surgery. Though only two oral surgeons in the area surrounding the jail would treat inmates like O'Quinn, an appointment was available for O'Quinn on February 8, 2008 due to a cancellation. However, O'Quinn refused this appointment.[5]

---

[4]Notably, in his original claims, O'Quinn does not challenge any delays of surgery prior to April, 2008. Dkt. # 4.

[5]In an unverified response to the motion for summary judgment, O'Quinn claims that Adkins is lying. Further, O'Quinn alleges that was not aware of a February appointment and thus could not have refused it. Dkt. # 44 at 1. Vague and conclusory allegations are insufficient to withstand summary judgment. Brown v. Flowers, 196 F.App'x 178, 182 (4th Cir. 2006). O'Quinn's bare assertion that Adkins is untruthful is incapable of creating a material issue of genuine fact.
O'Quinn also argued that Adkins is lying because O'Quinn's family dentist was not aware of the existence of the prior appointment. Dkt. # 44 at 2. O'Quinn's unverified filing setting forth hearsay from his family dentist is not properly placed in the record. But even if it were considered true, it would not create a material issue of fact, as nothing on the record indicates that O'Quinn's family dentist was the dentist for the February appointment. Thus the family dentist's lack of knowledge doesn't have

Second, O'Quinn pursued a medical furlough, thereby removing responsibility for the appointment from Adkins.[6] Indeed, Adkins' affidavit makes clear that a medical furlough must be arranged by a prisoner's family or lawyer, and that medical appointments during a furlough are not arranged by the prison. Again, it's clear that Adkins was not deliberately indifferent for this delay, as O'Quinn chose to refuse the early surgery appointment and to pursue a medical furlough.

Third, O'Quinn's furlough was revoked on July 1, 2008, by Judge Henry A. Vanover of the Circuit Court for Dickinson County. Simply put, Adkins is not responsible for the fact that a court revoked O'Quinn's furlough, thereby further delaying O'Quinn's surgery.[7] Though O'Quinn attempts to conflate the court's actions with Adkins', the jail and court are quite different entities. Accordingly, Adkins was not responsible for delays of surgery leading up to July 1, 2008, or those directly traceable to the judge's revocation of the medical furlough.

---

anything to do with the existence of that appointment. However, as set forth above, even in a world in which there was no February appointment, Adkins was not deliberately indifferent because O'Quinn wished to have a medical furlough.

[6]Similarly, O'Quinn submitted a grievance form in which he claims that a prison official searched his file and could not find a reference to O'Quinn's refusal of the February 8, 2008 appointment. Dkt. # 18. However, this form does not create a genuine issue of material fact, for the same reasons noted above. The real cause of delay beyond the very early February appointment was O'Quinn's desire to obtain a medical furlough.
Additionally, O'Quinn appears confused as to who was responsible for arranging his medical care, and he has submitted unverified pleadings indicating that he complained to Adkins about delays in his medical furlough. Exhibits to Dkt. # 4. Assuming arguendo that O'Quinn's exhibits are true and correct, they do not establish that Adkins was in fact responsible for arranging O'Quinn's furlough. Rather, they at most indicate that jail personnel communicated with O'Quinn's lawyer about his appointment and may have helped O'Quinn's lawyer make an appointment. Such speculative facts do not help establish a case of deliberate indifference, as they indicate that the jail made efforts on O'Quinn's behalf, rather than neglecting or somehow stopping O'Quinn's surgery.

[7]O'Quinn alleges in an unverified pleading that his furlough was revoked because other charges were brought against him. Dkt. #49 at 2.

12

Additionally, as soon as nurse Adkins learned that O'Quinn's furlough had been revoked, he arranged an appointment for O'Quinn on August 27, 2008. Thus, Adkins was not deliberately indifferent to O'Quinn's need for surgery, as Adkins obtained the first available appointment. The delay until August was outside of Adkins' control because only two oral surgeons in the area would see an inmate like O'Quinn. Indeed, the record suggests that such a delay is not uncommon because of the dearth of oral surgeons in southwest Virginia.

Fourth, O'Quinn's scheduled August 27, 2008 appointment was delayed by an equipment failure at the oral surgeon's office. Upon learning of the equipment failure, Adkins rescheduled O'Quinn's surgery for the first available date, October 22, 2008. He also requested notice of any openings that might come available. No additional openings became available, so O'Quinn had surgery on October 22, 2008. Quite obviously, equipment failure in an oral surgeon's office was outside of the control of Adkins. Moreover, Adkins responded to the event quickly and efficiently by making a new appointment for O'Quinn. The length of time between the equipment failure and the new appointment was unfortunate, but not unusual because of the scarcity of oral surgeons willing to see inmates. Thus, on the facts properly included in the record, O'Quinn's claim of medical indifference fails.[8]

---

[8]O'Quinn presents hearsay in his unverified pleadings to the effect that his family dentist denied having an equipment failure. Dkt. # 44 at 2-3. O'Quinn further argues that Adkins delayed scheduling O'Quinn's appointment because Adkins believed that O'Quinn would be transferred between jails. Id. Nothing in the record indicates that O'Quinn's family dentist was the surgeon with whom the appointment was scheduled. Thus, even if the undersigned were to consider this improperly submitted hearsay, it would not create a material issue of genuine fact on the existing record.

However, even if the undersigned were to accept O'Quinn's facts, they would not create a material issue of fact as to deliberate indifference, as it may have been reasonable of Adkins to briefly delay making an appointment for non-emergency surgery in August, if O'Quinn were to be transferred. Given the dearth of appointments near the jail, and that the next available appointment was not until October, this could in fact have been to O'Quinn's advantage, as more oral surgery appointments may have been available in other regions of the state.

In sum, O'Quinn delayed his own surgery by refusing an early appointment and then attempting to have his family take him for treatment. Further delays, due to the revocation of O'Quinn's medical furlough and equipment failure were not Adkins' fault. Indeed, Adkins responded to them quickly and reasonably. Adkins was in no way deliberately indifferent to O'Quinn's need for surgery. As a result, the undersigned recommends that defendant's motion for summary judgment on the issue of deliberate indifference be **GRANTED** and that O'Quinn's claims be dismissed.[9] Having concluded that Adkins was not constitutionally indifferent to O'Quinn's medical condition, the undersigned recommends that the issue of qualified immunity be **DENIED AS MOOT**.

## IV.

The undersigned further **RECOMMENDS** that defendant's Motion for Summary Judgment, Dkt. # 39, be **GRANTED** as to Adkins' claim that he was not deliberately indifferent to O'Quinn's medical needs, and **DENIED** as **MOOT** as to his claim for qualified immunity. It

---

[9] O'Quinn raises three additional matters in passing that fail as a matter of law. First, O'Quinn argues that he should not have been charged co-payments for his medical treatment. Requiring O'Quinn to make medical co-payments does not violate the constitution. Johnson v. Dept's of Pub. Safety & Corr. Serv., 885 F.Supp. 817-819-20 (D.Md. 1995). Accordingly, the undersigned recommends that this claim be dismissed as a matter of law.

Second, O'Quinn references the United Nations Declaration of Human Rights in his "Hazardous Claim for Negligence." Dkt. # 4. The United Nations Declaration of Human Rights does not grant O'Quinn legal rights enforceable in the United States court system. See e.g., Crow v. Gullet, 541 F.Supp. 785, 794 (8th Cir. 1982); Ragland v. Angelone, 420 F. Supp. 507, 512 n.5 (W.D. Va. 2006). Accordingly, the undersigned recommends that this claim be dismissed for failure to state a legally cognizable claim.

Third, O'Quinn repeats his claim that he was denied access to legal libraries. That claim has been dismissed by separate order and opinion of this court.

is **RECOMMENDED** that plaintiff's claims at Dkt. # 4 and discovery motion at Dkt. # 54 be **DISMISSED** and that this matter be **STRICKEN** from the active docket of the court.

The Clerk is directed to transmit the record in this case to Honorable Glen E. Conrad, United States District Judge. Plaintiff is reminded that pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send copies of this Report and Recommendation to plaintiff.

Enter: This 1st day of February, 2010.

Michael F. Urbanski
United States Magistrate Judge